Sarah Tollison
David Defazio
DeFazio Law Office, LLC
172 Center Street
P.O. Box 4877
Jackson, Wyoming 83001
(307) 733-5965 – telephone
(307) 733-3786 – fax
sarah@defaziolaw.com
david@defaziolaw.com
Attorneys for Plaintiffs Defty
WSB # 6-4371
WSB # 6-3140

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **SPENCER AND LAURA DEFTY,** | ) | |
| **Individuals residing in California,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 0:21-cv-112** -KHR |
| **v.** | ) | |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY, an Illinois company;** | ) | |
| **SUBURBAN PROPANE, MLP, a** | ) | |
| **New Jersey corporation; SWIFT** | ) | |
| **CREEK PLUMBING, LLC, a** | ) | |
| **Wyoming limited liability company,** | ) | |
| **and DANE AND STACY RUNIA,** | ) | |
| **Individuals residing in Wyoming,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

COME NOW, Plaintiffs Spencer and Laura Defty (hereinafter, "Plaintiffs Defty" or "the Deftys"), by and through counsel undersigned, and for their *Complaint* against Defendant State Farm Fire and Casualty Company ("Defendant State Farm"), Defendant Suburban Propane MLP ("Defendant Suburban Propane"), Defendant Swift Creek Plumbing, LLC ("Defendant Swift Creek"), and Defendants Dane and Stacy Runia (hereinafter, "Defendants Runia" or "the Runias") (together, "Defendants"), and hereby state and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.      At all times relevant to this *Complaint*, Plaintiffs Defty are residents of California and own a home at 79 Alpine Village Loop, Alpine, Lincoln County, Wyoming 83128 ("Defty Residence").

2.      At all times relevant to this *Complaint*, Defendant State Farm is and was an Illinois company authorized to transact the business of insurance in the State of Wyoming with its principle place of business at One Defendant State Farm Plaza, Bloomington, Illinois 61710.

3.      At all times relevant to this *Complaint*, Defendant State Farm was authorized to transact business in the State of Wyoming, and insured the real property of Plaintiffs Defty via an insurance Policy (State Farm Policy Number 50-BB-J269-6) for such property located at 79 Alpine Village Circle/Loop, Alpine, Lincoln County, Wyoming.

4.      Upon information and belief, and at all times relevant to this *Complaint*, Defendants Runia were residents of Wyoming and own a home at 75 Alpine Village Loop, Alpine, Lincoln County, Wyoming 83128 ("Runia Residence").

5.      At all times relevant to this *Complaint*, Defendant State Farm was authorized to transact business in the State of Wyoming, and insured the real and personal property of Defendants Runia via an insurance Policy for such property located at 75 Alpine Village Circle/Loop, Alpine, Lincoln County, Wyoming.

6.      Upon information and belief, and at all times relevant to this *Complaint*, Defendant Suburban Propane is and was a Master Limited Partnership, with its principal place of business in Whippany, New Jersey, and was doing business in the State of Wyoming, which includes, but is not limited to, selling, installing, servicing, inspecting, and repairing propane gas to residents.

7.      Upon information and belief, and at all times relevant to this *Complaint*, Defendant Swift Creek is and was a Wyoming Limited Liability Company, with its principal place of business in Afton, Lincoln County, Wyoming, and was doing business within the State of Wyoming, which includes, but it not limited to, plumbing work and installing, connecting, inspecting, servicing and repairing propane gas distribution lines, piping and equipment.

8.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1), since diversity exists between Plaintiffs and Defendants.

9.      The amount in controversy is in excess of $75,000.00, therefore, this Court has

        subject matter jurisdiction under 28 U.S.C. § 1332(a).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1-2), as Wyoming is where the

        acts and omissions giving rise to the lawsuit occurred and Defendant Swift Creek

        is a resident of Wyoming.

## BACKGROUND FACTS

11.     Plaintiffs Defty own a home at 79 Alpine Village Loop, Alpine, Lincoln County,

        Wyoming 83128 ("Defty Residence"). Plaintiffs Defty purchased the Defty

        Residence in or about 2008.

12.     At all times relevant to this *Complaint*, the Defty Residence was insured by

        Defendant State Farm under Policy No. 50-BB-J269-6 ("the Policy").

13.     On or about September 2018, Dane and Stacy Runia purchased a home at 75

        Alpine Village Circle/Loop, Alpine, Lincoln County, Wyoming (the "Runia

        Residence").

14.     Both the Defty Residence and the Runia Residence are located in an airpark fly

        in/fly out community in Alpine, Lincoln County, Wyoming, and both include

        the house and a hangar/garage.

15.     The Defty Residence is immediately next door to the Runia Residence, and the

        sides of their houses are approximately twenty (20) feet apart.

16. Upon information and belief, the Runia Residence was on a propane gas system which provided propane gas to the gas-fueled fireplace and cooktop inside the house.

17. Upon information and belief, the propane gas to the Runia Residence was provided by an underground tank at the Runia Residence. The underground tank and gas distribution system, including associated piping and equipment up to the house, was installed by Defendant Suburban Propane.

18. Upon information and belief, Defendant Suburban Propane owned the underground tank and gas distribution system up to the house at the Runia Residence and had provided propane gas and related services to the previous owners of the Runia Residence prior to Defendants Runia owning the property.

19. Propane gas is known to be an ultrahazardous material, which requires the highest degree of monitoring, care and handling.

20. Upon information and belief, after purchasing the Runia Residence, Defendants Runia were contacted by Defendant Suburban Propane to either enter into a service agreement with it or excavate the tank and related equipment so Defendant Suburban Propane could come take possession of it.

21. Upon information and belief, Defendant Dane Runia then signed Defendant Suburban Propane's *Residential Customer Service Agreement* provided to him by Defendant Suburban Propane, and returned it to Defendant Suburban Propane on October 24, 2018.

22.   Upon information and belief, after purchasing the Runia Residence, Defendants Runia remodeled their Residence, including installing a new gas fireplace.

23.   Upon information and belief, as part of the remodel the gas fireplace was plumbed and connected to the existing gas distribution system in the house by Defendant Swift Creek.

24.   Upon information and belief, at the time of the remodel, an interior gas line also supplied propane gas to a cooktop in the kitchen which was in extensive before the remodel.

25.   Upon information and belief, the interior gas line and the cooktop were not replaced during the remodel and remained in the house following the remodel.

26.   Upon information and belief, as part of Defendant Swift Creek's installation of gas piping to the new gas fireplace, it would have turned off the propane shut-off valve on the riser outside the house.

27.   Upon information and belief, prior to starting the remodel and at the time Defendant Suburban Propane's *Residential Customer Service Agreement* was signed and returned to Defendant Suburban Propane, Defendant Dane Runia notified Defendant Suburban Propane that it was remodeling their Residence.

28.   Upon information and belief, Defendant Suburban Propane advised Defendant Dane Runia to notify it when the work was done so it could come to the Runia Residence and test all propane-associated equipment, valves, lines and connections.

29.     Upon information and belief, the remodel of the Runia Residence was completed in November 2018, and upon information and belief, Defendant Suburban Propane came to the Runia Residence to check and test the gas distribution system.

30.     Upon information and belief, on or about March 4, 2019, snow and ice from the roof of the Runia Residence fell and broke the shut off valve on the riser of the exterior, above-ground gas piping outside of the house.

31.     Upon information and belief, the propane gas in Defendants Runia's gas distribution system installed by Defendant Suburban Propane travels from the tank via underground piping which comes up out of the ground near the house to a second stage regulator.

32.     Upon information and belief, the propane gas distribution piping then comes off of the second stage regulator through a shut off valve and then into the interior of the house.

33.     Upon information and belief, the piping then goes to the propane gas fueled appliances.

34.     Upon information and belief, the propane gas travelled through the broken riser valve and migrated into the Runia Residence through the opening where the piping enters the interior of the house or some other nearby opening.

35.     Upon information and belief, on or about March 4, 2019, the migrating propane gas then accumulated inside the house until it was ignited by an appliance

within the Runia Residence, causing an explosion that caused extensive damage to the Runia property, and beyond.

36.　Upon information and belief, post-explosion investigation determined that the fugitive gas inside the house at the time of the explosion was not from a leak to the piping inside the house nor from the gas fueled appliances.

37.　As a result of the explosion, the Runia Residence and personal property were completely destroyed.

38.　The explosion also severely damaged the Defty Residence, which sits approximately twenty (20) feet from the Runia Residence, and three other neighboring properties to the Runia Residence.

39.　On or about March 8, 2019, Plaintiffs Defty filed a claim with Defendant State Farm in regard to the matter which is the subject of this *Complaint*, Claim Number: 50-7895-S1.

40.　There are three coverages under Plaintiffs Defty's Homeowner's Policy. These include Coverage A - Dwelling, Coverage B - Personal Property, and Coverage C - Additional Living Expense/Fair Rental Value. Their Policy limits on the date of loss were:

Coverage A:　1,078,242.00
Coverage B:　808,682.00
Coverage C:　323,473.00

41.　Under the Policy, Coverage A of the Dwelling states:

1.  Dwelling.  We cover the dwelling and materials and supplies located on or adjacent to the residence/premises for use in the construction, alteration, or repair of the dwelling or other structures on the residence/premises.

2.  Other Structures.  We cover other structures on the residence premises, separated from the dwelling by clear space.  Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

42.    Under the Policy, Coverage B of Personal Property states:

1.  Property Covered.
a.        We cover personal property owned or used by an insured while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property:
(1) owned by others while the property is on the part of the residence/premises occupied exclusively by an insured;
(2) owned by a guest or a residence! employee, while the property is in any other residence occupied by an insured[.]

43.    Under the Policy, Coverage C of Personal Property states:

2.        Fair Rental Value.  When a loss! insured causes that part of the residence/premises rented to others or held for rental by you to become uninhabitable, we will pay its fair rental value. Payment will be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by the expiration of this policy. Fair rental value will not include any expense that does not continue while that part of the residence/premises rented or held for rental is uninhabitable.

44.    The damages to Plaintiffs Deftys' Residence was extensive, and included, but was not limited to those described and pictured in Plaintiffs' experts' reports. As a short conclusion, Plaintiffs' expert Tom Hayes' report states that the damages included, but were not limited to:

CONCLUSION

The blast moved the house about an inch, some areas more than others, such as the garage/hangar. Three areas were actually imploded: the living room, the master bedroom and north garage/hangar walls.

The following instruments were used in order to verify my conclusions: a plumb bob, string line, tape measure, 6 ft level, and laser.

As can be seen in the following pictures, the explosion lifted the logs especially at the garage/hangar. There are 23 logs stacked on each other. Therefore, if each log moved only 1/8", then there would be total displacement of 2 7/8". Where the soffit in the overhang blew out, the lift caused the log to split. The cracking and stretching of the chinking also would indicate this. As seen in the photos on page 31, the roof line was lifted on the ends of the garage/hangar due to the blast dynamics.

45. For the past two-plus years, Plaintiffs Defty have attempted to resolve their claim with Defendant State Farm, which also insures the Runia Residence.

46. Plaintiffs Defty placed trust and confidence in Defendant State Farm to "be a good neighbor" and do what it promised: pay covered claims for property damage in full.

47. Defendant State Farm has acted in bad faith, and breached their duty of good faith and fair dealing improperly analyzing the extensive damages to the Defty Residence and by offering to settle Plaintiffs Defty's claim for a fraction of the damages their Residence incurred from the explosion, which leveled the Runia Residence, which sat approximately twenty (20) feet from the Defty Residence.

48. Upon information and belief, Defendant State Farm denied coverage to Defendants Runia's claim for damages related to the explosion.

49. After receiving an unacceptable offer to resolve the claim from Defendant State Farm, Plaintiffs Defty made temporary repairs to their Residence to protect it

from snow and other elements, since parts of their home were totally exposed due to blown-out windows, and other structural deficiencies.

50. The most substantial repairs to the most extensive structural damages to the Defty Residence have not yet been made due to the fact that Defendant State Farm has refused to pay the substantial amounts required for such repairs.

51. Defendant State Farm's Policy with Plaintiffs Defty contains a provision that has drawn out this process and made it nearly impossible for the parties to even come close to an agreement about the scope of the damages to the Defty Residence.

52. Specifically, the Policy has an "Appraisal" Provision that is a prerequisite to Plaintiffs Defty being able to file suit in court.

53. The "Appraisal" Provision states that if the experts hired by Plaintiffs Defty and Defendant State Farm cannot come to an agreement as to the scope of damages to the Defty Residence, that the appraisal process itself is not proper for determining damages to the Defty Residence.

54. As of the filing of this *Complaint*, Plaintiffs Defty's experts have conducted extensive inspections with proper instrumentation of the Defty Residence and estimate the repairs will cost more than $600,000.00.

55. Conversely, Defendant State Farm's expert visited the Defty Residence, did not use instrumentation to inspect the Residence (he "eyeballed it"), and has estimated the repairs will cost approximately $40,000.00.

56.     This is unconscionable, because so long as the respective experts of the parties

disagree as to the scope of repairs and their costs, Defendant State Farm's Policy

purports that this dispute may not be submitted to the courts for resolution.

57.     This provision deprives Plaintiffs Defty of their right to seek the help of the

courts when Defendant State Farm can simply hire experts that unfairly and

unreasonably undervalue the extensive damages to the Defty Residence, and

then invoke the "Appraisal" provision to prevent Plaintiffs Defty from its civil

remedy in this Court.

58.     Defendant State Farm's improper conduct evidenced in the handling of Plaintiff

Defty's claim for property damage includes, but is not limited to:

a.   Failing to treat Plaintiffs Defty's interests with equal regard as it does its

own interests and making its claims handling experience an adversarial

process;

b.   Failing to abide by the terms of the Policy;

c.   Failing to properly consider and analyze Plaintiffs Defty's submissions

supporting the claim;

d.   Failing to conduct a full and fair investigation of Plaintiffs Defty's claim;

e.   Intentionally failing to fulfill the fundamental purpose of insurance

coverage; and

f.   Intentionally benefiting from the adverse consequences to Plaintiffs Defty

by denying full and fair benefits to Plaintiffs Defty.

## COUNT I – FIRST PARTY BAD FAITH (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING) AGAINST DEFENDANT STATE FARM

59.   Plaintiffs incorporate all of the previous allegations by this reference.

60.   As alleged herein, Plaintiffs Defty have a Policy with Defendant State Farm and are entitled to claim full benefits directly under that Policy.

61.   Defendant State Farm has unequal bargaining power in relation to Plaintiffs Defty and the insurance contract between them.

62.   A breach of the duty of good faith and fair dealing rises to the level of a tort in the context of the dealings between the parties to an insurance contract.

63.   As set forth in paragraphs 48 through 54 above, Defendant State Farm's Policy contains an unconscionable provision that effectively prevents Plaintiffs Defty from being fairly compensated for the extensive damages to the Defty Residence.

64.   Plaintiffs Defty is held hostage by such a provision when Defendant State Farm can simply hire "experts" to undervalue the damages to its insureds' Residences, therefore depriving Plaintiffs Defty of being able to seek remedies in this Court, and also to be fairly compensated for the extensive damage this massive gas explosion caused to the Defty Residence.

65.   Plaintiffs Defty have a bad faith claim against Defendant State Farm, which insures the Defty Residence.

66.   A cause of action for "first party" bad faith will lie when an insurer in bad faith refuses to pay its insured's direct claim for Policy benefits. *McCullough v. Golden Rule Insurance Co.,* 789 P.2d 855 (Wyo.1990).

67.     Defendant State Farm has denied full benefits owed to Plaintiffs Defty under the Policy at issue without a reasonable basis for doing so.

68.     A reasonable insurer would not have denied or delayed payment of benefits under the circumstances of Plaintiffs Defty's claim, and Defendant State Farm has knowingly and/or has recklessly disregarded the lack of a reasonable basis for denying Plaintiffs Defty's claim. *Id.* at 860.

69.     Furthermore, under an objective standard test, the validity of Plaintiffs Defty's claim is not fairly debatable; it is a valid claim, supported by expert evidence.

70.     As alleged herein, Defendant State Farm has acted intentionally, willfully, and wantonly, justifying the imposition of punitive damages.

71.     As a direct result of Defendant State Farm's bad faith, Plaintiffs Defty have suffered damages in an amount to be proven at trial.

## <u>COUNT II – BREACH OF CONTRACT AGAINST DEFENDANT STATE FARM</u>

72.     Plaintiffs incorporate all of the previous allegations by this reference.

73.     Plaintiffs Defty have a contract of insurance under which State Farm agreed to pay for covered claims under the terms of the Policy.

74.     Plaintiffs Defty made a proper claim under their contract of insurance with Defendant State Farm for payment to repair the extensive damage caused by the explosion on March 4, 2019.

75.     Defendant State Farm breached the insurance contract by denying full payment of Plaintiffs Defty's claims.

76.    As a direct and proximate result of Defendant State Farm's breach of contract,

Plaintiffs Defty have been damaged in an amount to be proven at trial.

### COUNT III – STATUTORY ATTORNEYS' FEES AGAINST
### DEFENDANT SUBURBAN PROPANE

77.    Plaintiffs incorporate all of the previous allegations by this reference.

78.    Defendant State Farm violated the provisions of W.S. § 26-15-124(c) by

unreasonably and without cause refusing to pay the full amount of Plaintiffs

Defty's claim, which is covered by the Policy at issue.

79.    As a result, Plaintiffs Defty are entitled to attorneys' fees, with interest at 10% per

annum, pursuant to W.S. § 26-15-124(c).

### COUNT IV – NEGLIGENCE CLAIM AGAINST
### DEFENDANT SUBURBAN PROPANE

80.    Plaintiffs incorporate all of the previous allegations by this reference.

81.    Defendant Suburban Propane is responsible for the acts and omissions of its

agents, representatives, employees and assigns and for its own acts and

omissions.

82.    Defendant Suburban Propane, and by and through its agents and employees,

owed a duty to Defendants Runia to install, inspect, check and repair the

propane gas distribution system at the Residence, including the underground

tank, underground piping, riser piping, second stage regulator and all associated

piping and equipment, and the gas lines and gas fueled appliances inside the

Runia Residence, in a reasonable and workmanlike manner commensurate with

ultrahazardous propane gas, and according to all applicable codes, regulations, and industry standards.

83. Defendant Suburban Propane, and by and through its agents and employees, breached those duties, which include, but are not limited to, failing to install and properly protect the second stage regulator and associated piping and equipment from the reasonably anticipate forces of snow falling from the Runia Residence's roof on or around the second stage and associated piping, failing to properly secure the piping and second stage regulator, failing to properly inspect and correct a dangerous conditions associated with the gas distribution system, and failing to properly hire, train and supervise its employees to inspect gas distribution systems and identify and correct dangerous conditions.

84. The negligence of Defendant Suburban Propane, and the negligence of its employees and agents, caused the explosion.

85. As a direct and proximate result of Defendant Suburban Propane's negligence and the negligence of its employees and agents, Plaintiffs Defty suffered damages in an amount to be proven at trial.

## COUNT V – NEGLIGENCE CLAIM AGAINST DEFENDANT SWIFT CREEK

86. Plaintiffs incorporate all of the previous allegations by this reference.

87. Defendant Swift Creek is responsible for the acts and omissions of its agents, representatives, employees and assigns and for its own acts and omissions.

88.     Defendant Swift Creek, and by and through its agents and employees, owed a

        duty to Defendants Runia to install, inspect, check and repair the propane gas

        distribution system at the Residence, including the piping within the Runia

        Residence and the piping was installed as a part of its work at the Runia

        Residence, and all piping, riser piping, second stage regulator and all associated

        piping and equipment in a reasonable and workmanlike manner commensurate

        with ultrahazardous propane gas, and according to an applicable codes,

        regulations, and industry standards.

89.     Defendant Swift Creek, and by and through its agents and employees, breached

        those duties, said breaches including but not limited to failing to install and

        properly protect the second stage regulator and associated piping and equipment

        from the reasonably anticipate forces of snow falling from the roof of the Runia

        Residence, on or around the second stage and associated piping, failing to

        properly secure the piping and second stage regulator, failing to properly inspect

        and correct a dangerous conditions associated with the gas distribution system,

        and failing to properly train its employees to inspect gas distribution systems

        and identify and correct dangerous conditions.

90.     The negligence of Defendant Swift Creek, and the negligence of its employees

        and agents, caused the explosion.

91.     As a direct and proximate result of Defendant Swift Creek's negligence and the

negligence of its employees and agents, Plaintiffs Defty suffered damages in an

amount to be proven at trial.

## COUNT VI - NEGLIGENCE CLAIM AGAINST
## DEFENDANTS RUNIA

92.     Plaintiffs incorporate all of the previous allegations by this reference.

93.     Defendants Runia are responsible for the acts and omissions of themselves and

their agents, representatives, employees and assigns.

94.     Defendants Runia owed a duty to hire competent subcontractors to remodel their

home to protect themselves and others from harm, and to ensure the work

performed in and on their home was done in a reasonable and workmanlike

manner.

95.     Defendants Runia, by and through their agents Defendant Swift Creek and

Defendant Suburban Propane, breached those duties, which led to the explosion.

96.     As a direct and proximate result of Defendants Runia's negligence and the

negligence of its agents, Plaintiffs Defty suffered damages in an amount to be

proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Defty pray for judgment against Defendants as follows:

a.      Defendant State Farm has acted in bad faith and award Plaintiffs Defty

damages in an amount to be proven at trial;

b.   Defendant State Farm has breached its insurance contract, and award
     Plaintiffs Defty damages in an amount to be proven at trial;

c.   For Plaintiffs Defty attorneys' fees and costs, plus ten percent (10%) per
     annum, in bringing this action pursuant to W.S. § 26-15-124(c);

d.   Defendant Suburban Propane was negligent and award Plaintiffs Defty
     damages in an amount to be proven at trial;

e.   Defendant Swift Plumbing was negligent and award Plaintiffs Defty
     damages in an amount to be proven at trial;

f.   Defendant Runia were negligent and award Plaintiffs Defty damages in
     an amount to be proven at trial;

g.   Trial before a jury of twelve; and

h.   Such further or other relief as allowable by law.

## JURY DEMAND

Plaintiffs Defty hereby demand trial by jury of twelve.

Respectfully submitted this 4TH day of June, 2021.

/s/ Sarah Tollison
_____

Sarah Tollison, WSB #6-4731
David DeFazio, WSB #6-3140
DeFazio Law Office, LLC.
P.O. Box 4877
172 Center Street, Suite 203
Jackson, WY 83001
(307)-733-5965- Telephone
(307)-733-3786- Facsimile

sarah@defaziolaw.com
david@defaziolaw.com
Attorneys for Plaintiffs Defty